IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**LINDA GAIL NELSON,**

    **Plaintiff,**

v.                                                                                           Civil Action No. 1:18-cv-01332

**ANDREW SAUL,**[1]
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Plaintiff Linda Gail Nelson ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. By standing order entered on January 4, 2016, and filed in this case on October 1, 2018, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Brief in Support of Her Social Security Appeal (ECF No. 6) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 7).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Claimant's request to

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1

reverse the Commissioner's decision (ECF No. 6), **GRANT** the Commissioner's request to affirm his decision (ECF No. 7), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.  BACKGROUND

*A. Information about Claimant and Procedural History of Claim*

Claimant was 55 years old at the time of her alleged disability onset date and 59 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 89.)[2] She is a high school graduate. (*Id.* at 212.) Most recently, she worked as a financial counselor at a doctor's office, and she has also been employed as a billing clerk at a doctor's office. (*Id.*) Claimant alleges that she became disabled on January 10, 2014, due to stage 2 cancer in her right breast, degenerative disc disease, osteoporosis, depression, anxiety, rheumatoid arthritis, psoriatic arthritis, psoriasis, asthma, and high blood pressure. (*Id.* at 211.)

Claimant filed her application for benefits on January 12, 2015. (*Id.* at 191–93.) Her claim was initially denied on June 29, 2015, and again upon reconsideration on December 16, 2015. (*Id.* at 118–22, 124–26.) Thereafter, on January 11, 2016, Claimant filed a written request for hearing. (*Id.* at 129–30.) An administrative hearing was held before an ALJ on September 19, 2017, in Bluefield, West Virginia, with the ALJ appearing from Charleston, West Virginia. (*Id.* at 54–88.) On December 15, 2017, the ALJ entered an unfavorable decision. (*Id.* at 11–30.) Claimant then sought review of the ALJ's decision by the Appeals Council on January 28, 2018. (*Id.* at 185–90.) The Appeals Council denied Claimant's request for review on August 2, 2018, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–7.)

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 5.

Claimant timely brought the present action on October 1, 2018, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed an Answer (ECF No. 4) and a transcript of the administrative proceedings (ECF No. 5). Claimant subsequently filed her Brief in Support of Her Social Security Appeal (ECF No. 6), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 7). As such, this matter is fully briefed and ready for resolution.

B.  Relevant Medical Evidence

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1. *Breast Cancer Treatment*

On January 7, 2014, a cancerous mass was detected in Claimant's right breast. (Tr. at 556–58, 661, 663–64.) At that time, Claimant was employed by Dr. Joseph M. Baisden, M.D., Ph.D. ("Dr. Baisden"), an oncologist who then began to treat Claimant after her diagnosis. (*See* ECF No. 6 at 3.) Dr. Baisden examined Claimant on January 14, 2014, and noted "significant symptoms of anxiety and depression," including "severe fatigue, poor appetite, difficulty sleeping, inability to concentrate, as well as severely depressed thoughts." (Tr. at 550.)

Shortly after her diagnosis, Claimant underwent a bilateral mastectomy with breast reconstruction. (*Id.* at 343, 376–78, 473–536.) She also began chemotherapy at David Lee Outpatient Cancer Center ("Lee Cancer Center") in April 2014. (*Id.* at 395–97.) At Claimant's initial consultation on April 16, 2014, oncologist Dr. Ni Gorsuch, M.D. ("Dr. Gorsuch") noted "chronic musculoskeletal pain" and "some depression." (*Id.* at 396.) At follow-up appointments on May 21 and June 11, 2014, Dr. Gorsuch noted that Claimant "tolerated chemotherapy poorly" and was "profoundly debilitated by side effects of treatment." (*Id.* at 392, 394.) At Claimant's

July 9, 2014 appointment, Dr. Gorsuch stated that Claimant "still has persistent fatigue," but "[it] is not as [bad] as before." (*Id.* at 388.) On July 22, 2014, Dr. Baisden noted that Claimant's physicians had decided "to discontinue any further chemotherapy after this round and to begin external beam radiation therapy." (*Id.* at 541.) Dr. Baisden also noted that Claimant reported pain, nausea, fatigue, and depression at her appointments throughout the remainder of 2014. (*Id.* at 537–42.)

On January 28, 2015, Claimant reported to Dr. Baisden that she had considered suicide as a result of pain associated with a shingles outbreak and continued to complain of pain in her chest and back as well as fatigue. (*Id.* at 561–62.) Claimant also reported that she fell down the stairs, which Dr. Baisden attributed to "chemotherapy-induced peripheral neuropathy." (*Id.*) On May 15, 2015, Dr. Baisden described Claimant's condition as "stable" but noted that she suffered from back pain and depression. (*Id.* at 563–64.) His July 10, 2015 and August 12, 2015 findings were similar. (*Id.* at 571, 573.) At her November 18, 2015 appointment, Claimant reported worsening memory and depression, as well as severe back pain and continued fatigue. (*Id.* at 605.)

At her appointments on July 13, 2016, and December 23, 2016, Claimant reported that she was doing well, but Dr. Baisden noted on both occasions that Claimant "continues to have difficulty with significant pain, depression and short-term memory loss." (*Id.* at 833, 853.) Similarly, at Claimant's appointment on May 5, 2017, Dr. Baisden noted that she "is stable with continued severe side effects from her treatment," including depression and fatigue. (*Id.* at 802–03.)

2. *Evidence Related to Back Pain*

Imaging of Claimant's cervical spine on September 25, 2014, revealed "C5-C6 degenerative disc disease and mild arthritis resulting in narrowing of the right neural foramen,"

4

with "[n]o evidence of fracture or bony destructive lesion." (*Id.* at 653.) Imaging of her thoracic spine conducted the same day revealed "[n]o fracture." (*Id.* at 657.)

Claimant underwent an MRI of her lumbar spine on August 10, 2015, which revealed "interval development of a probable Schmorl's node in the upper endplate of L3 with a little bit of enhancement and marrow edema," as well as "a mild concentric disc bulge" on L2-3. (*Id.* at 575.) The MRI also revealed "[m]ilder degenerative changes at other levels." (*Id.* at 576.)

    3. *Opinions of Dr. Joseph M. Baisden, M.D., Ph.D.*

On July 10, 2015, Dr. Baisden wrote a letter opining that Claimant "is currently disabled and will remain so due to permanent side effects from her breast cancer therapy." (*Id.* at 559.) He related that Claimant "was unable to receive her final recommended cycle [of chemotherapy] due to poor tolerance" and that her "chronic back pain" had "worsen[ed] . . . to the point of debilitation." (*Id.*) Dr. Baisden also explained that Claimant "suffered from neuropathy, which is not improving with time" and that "[h]er pain requires daily narcotic use." (*Id.*)

Dr. Baisden opined that Claimant "is unable to do light house work for more than 45 minutes a day" and must "take several breaks to complete her work." (*Id.*) He further stated, "She is unable to sit to do desk work for more than 2 hours at a time and would require multiple unscheduled breaks during an 8 hour work day to lie down to relieve her pain." Dr. Baisden opined that Claimant "is unable to do more than 30 minutes of writing or typing without having to take Neurontin." (*Id.*) He noted that her medications were "very sedating." (*Id.*) Dr. Baisden also stated that Claimant suffered from "chemotherapy-induced cognitive dysfunction/impairment" and summarized Claimant's reported symptoms. (*Id.*)

On March 9, 2016, Dr. Baisden completed a Physical Residual Functional Capacity Questionnaire for Claimant, noting clinical findings of "stable post bilateral mastectomy with reconstruction no evidence of recurrence, radiographic evidence of osteoporosis, signs of severe

depression and anxiety." (*Id.* at 577.) Dr. Baisden also noted that Claimant's symptoms included "chronic back pain, chest wall pain, fatigue, neuropathy, depression, short-term memory problems." (*Id.*) He opined that Claimant's symptoms would "[c]onstantly" interfere with her ability to work and that she was "[i]ncapable of even 'low stress' jobs." (*Id.* at 578.) He further opined that she could sit or stand for no more than thirty minutes at a time and that she could sit or stand for no more than two hours during an eight-hour workday. (*Id.* at 578–79.) He specified that Claimant would need to take a thirty-minute break every thirty minutes. (*Id.* at 579.) Regarding Claimant's abilities to perform certain activities, Dr. Baisden stated that Claimant could occasionally twist; rarely stoop, crouch, squat, or climb stairs; and never climb ladders. (*Id.* at 580.) He stated that she could never use her hands to grasp, turn, or twist objects or engage in fine manipulation with her fingers and could reach overhead only 10% of the time. (*Id.*) He opined that she would miss work more than four days per month. (*Id.*)

    *4. Mental Health Treatment*

While undergoing chemotherapy at Lee Cancer Center, Claimant met with psychologist Dr. Sarah A. Setran, Psy.D. ("Dr. Setran") on at least one occasion. (*See id.* at 382–85.) On July 9, 2014, Dr. Setran noted that Claimant "was depressed" and "may at times need assistance dressing and feeding herself as well as preparing her own meals," but the examination was otherwise normal. (*Id.* at 382.)

Claimant did not have other formal mental health treatment until she presented to psychologist Samantha Mann, M.A. ("Ms. Mann") at Bluestone Health Clinic on April 27, 2016. (*Id.* at 622–24.) Claimant reported to Ms. Mann that "her depression worsened after her treatment . . . for breast cancer" and that her feelings "are related to how she feels bad physically." (*Id.* at 622.) Claimant also reported that she suffered from "crying spells most every day," "sleep disturbances," "loss of interest in activities," "[d]ifficulty with concentration," and "[n]o energy."

(*Id.*)  Her mental status examination was normal, except Ms. Mann observed that Claimant had "depressed" mood and "sad" and "tearful" affect.  (*Id.* at 623.)  Ms. Mann diagnosed Claimant with Persistent Depressive Disorder, Generalized Anxiety Disorder, and Post Traumatic Stress Disorder.  (*Id.* at 623–24.)  She determined that Claimant's prognosis was "good due to her being new to treatment and motivated for behavior change."  (*Id.* at 623.)

Claimant continued to see Ms. Mann on an irregular basis through at least July 27, 2017.  (*Id.* at 625, 860–70.)  Ms. Mann did not conduct another formal mental status examination during much of this period, but she continued to discuss coping skills with Claimant.  (*See id.*)  Claimant reported on several occasions that she felt angry about her cancer diagnosis and her struggles with her physical health.  (*Id.* at 866–69.)  On March 3, 2017, Claimant related to Ms. Mann that her health had improved.  (*Id.* at 865.)  She also complained to Ms. Mann about her cognitive functioning and requested testing, but there is no evidence that such testing was ever performed.  (*Id.* at 860, 862–65.)

Ms. Mann conducted a mental status examination on July 27, 2017, noting that Claimant was "depressed" and "sad" and "showed worry" and "irritability."  (*Id.* at 860.)  Ms. Mann stated that Claimant had "impaired" memory based on her inability to recall what she had eaten for breakfast the day before or the date of her last doctor's appointment.  (*Id.*)  However, Ms. Mann stated that Claimant "was able to recall 3 of 3 objects after 10 minutes."  (*Id.*)  She reviewed Claimant's representations about her feelings and symptoms.  (*Id.* at 861.)  Ms. Mann diagnosed Claimant with Major Depressive Disorder, Single Episode, Moderate; Post Traumatic Stress Disorder; and Generalized Anxiety Disorder.  (*Id.*)  She stated that Claimant's "memory and cognitive difficulties are of concern" and recommended neuropsychological testing.  (*Id.* at 862.)  Ms. Mann described Claimant's prognosis as "guarded as [Claimant] has been in treatment for

some time and has made only slight progress." (*Id.*) She recommended continued therapy and medication. (*Id.*)

On August 11, 2017, Ms. Mann completed a Mental Impairment Questionnaire about Claimant. (*Id.* at 871–76.) She noted that Claimant "has responded positively to treatment but [is] only making small gains in depression and anxiety" and "had a recent setback to due grief (death in family)." (*Id.* at 871.) When assessing Claimant's mental abilities and their impact on her ability to work, Ms. Mann opined that Claimant would be unable to follow procedures or develop a routine, to maintain regular attendance, to work with others, to work without rest periods, or to tolerate stress and changes in her work setting. (*Id.* at 873.) Ms. Mann qualified that her opinions were "based on clinical interview and observation," not "formal testing." (*Id.*) Ms. Mann further opined that Claimant "has no tolerance for stressful activities" and "is very easily overwhelmed." (*Id.* at 874.) She related that Claimant "reports great difficulty with memory, concentration, organization, and distractibility." (*Id.*) However, Ms. Mann determined that Claimant had "moderate" functional limitations caused by her psychological symptoms. (*Id.* at 875.)

    5. *Consultative Psychological Examination: Dr. Tonya McFadden, Ph.D.*

Dr. Tonya McFadden, Ph.D. ("Dr. McFadden") examined Claimant on May 12, 2015. (*Id.* at 465.) Dr. McFadden noted that Claimant reported feeling "depressed most every day for several years" and that she "isolates herself" and "has lost interest in everything she once enjoyed." (*Id.* at 466.) Claimant also reported to Dr. McFadden that she had trouble concentrating, remembering, and making decisions. (*Id.*) Dr. McFadden noted that Claimant "related recurrent thoughts of death" but denied any previous suicide attempts or "[p]sychotic symptoms." (*Id.*)

Dr. McFadden's mental status examination of Claimant was largely unremarkable, except she observed that Claimant "[a]ppeared depressed" with "restricted" affect and had moderate deficiencies in her recent memory and mild deficiencies in concentration. (*Id.* at 468.) Dr.

8

McFadden diagnosed Claimant with Major Depressive Disorder Without Psychotic Features and Generalized Anxiety Disorder and noted that Claimant had symptoms of Obsessive-Compulsive Disorder. (*Id.* at 469.) Dr. McFadden determined that Claimant's prognosis was "[f]air with appropriate and sustained treatment." (*Id.* at 470.)

### 6. *Letter from Claimant's Sister, Donna Lear*

On August 31, 2015, Claimant's sister, Donna Lear ("Ms. Lear") supplied a letter describing Claimant's symptoms. (*Id.* at 270.) Ms. Lear explained that "[t]he anesthesia [from Claimant's mastectomy and reconstruction surgeries] has affected her thought process." (*Id.*) She noted that Claimant's thought process was "even worse now" after a surgery on June 3, 2015. (*Id.*) Ms. Lear further stated that Claimant's chemotherapy "has . . . made her so sick she can't function." (*Id.*) Ms. Lear represented that she conducted Claimant's banking and paid her bills, tracked her appointments, and filled out paperwork for her. (*Id.*)

## C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.\* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340

9

(4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most

10

the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 16.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) He found that Claimant's stage 2 breast cancer and degenerative disc disease constituted "severe" impairments. (*Id.*) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18–19.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work . . . except that [she] can frequently reach overhead bilaterally," and that she could "climb ramps and stairs frequently, and occasionally climb ladders, ropes, and scaffolds, balance, stop, kneel, crouch, and crawl." (*Id.* at 19.) In addition, the ALJ found that Claimant "can work at unprotected heights occasionally." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, she was able to perform her past relevant work as a billing clerk and collections clerk "as actually and generally performed." (*Id.* at 24.) As a result, the ALJ concluded that Claimant was not "under a disability . . . from January 10, 2014, through the date of this decision." (*Id.* at 25.)

## II.     LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ failed to accord proper weight to Dr. Baisden's[3] opinions about her functional abilities and failed to explain why he did so. (ECF No. 6 at 7–10.) She further asserts that the ALJ did not consider a letter from her sister about her limitations, which she claims bolsters Dr. Baisden's opinions. (*Id.* at 8–9.) Claimant asks this Court to reverse the Commissioner's decision and award her benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.) The Commissioner responds that the ALJ adequately explained his reasons for giving little weight to Dr. Baisden's opinions and significant weight to the state agency physicians' opinions and that Claimant failed to meet her burden to show that she is disabled. (ECF No. 7 at 8–13.)

When determining whether a claimant is disabled, the ALJ must "evaluate and weigh medical opinions" by considering, among other factors, "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam). A treating physician's opinion about a claimant's condition may be given "greater weight" than that of a non-treating physician "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270

---

[3] Claimant also references other treating physicians in her brief (ECF No. 6 at 8), but her arguments relate to the ALJ's failure to adopt only Dr. Baisden's findings (*see id.* at 1, 4–5, 8). Accordingly, the undersigned has focused the analysis on Dr. Baisden instead of Claimant's other providers.

F.3d 171, 178 (4th Cir. 2001). "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* Similarly, the ALJ is entitled to assign little or no weight to the opinions of nonmedical "other" sources if the opinions are "inconsistent with other evidence in the record." *Jones v. Berryhill*, 681 F. App'x 252, 255–56 (4th Cir. 2017) (per curiam).

In this case, the ALJ assigned "little weight" to Dr. Baisden's opinions about Claimant's functional abilities because his assessment of Claimant's limitations was "inconsistent with the medical evidence of record" and because he was not "a disinterested third party" due to his prior employment relationship with Claimant. (Tr. at 22–23.) The ALJ's review of the medical evidence of record led him to find that after being diagnosed with breast cancer, Claimant tolerated chemotherapy poorly and suffered from "some expected side effects," including "fatigue, nausea, and depression." (*Id.* at 20.) He also noted that Claimant suffered from back pain and osteoarthritis and that her medications made her "tired." (*Id.*) However, the ALJ found that Claimant's breast cancer treatment had been "successful" because "her condition was stable" and she had recently "reported feeling fairly well to her oncologist" despite the other symptoms. (*Id.* at 21, 24.) He further observed that she had "only mild degenerative changes" in her spine that did not require surgery. (*Id.* at 22.) And with respect to Claimant's depression and anxiety, the ALJ noted that her "limited treatment . . . began well after her treatment for breast cancer," and she had "irregular therapy sessions . . . on an as needed basis, as opposed to consistent regular appointments" and did not undergo "specified psychological or psychiatric care or hospitalization." (*Id.*)

The ALJ's discussion of this evidence belies Claimant's argument that the ALJ failed to explain his reasons for rejecting Dr. Baisden's opinion. (*See* ECF no. 6 at 8.) The ALJ properly discussed "which evidence [he] found credible and why" and explained "why the opinions merit th[e] weight" he assigned to them. *Radford v. Colvin*, 743 F.3d 288, 295 (4th Cir. 2013); *see Vest*

15

*v. Colvin*, No. 2:15-cv-05886, 2016 WL 5334668, at *3 (S.D.W. Va. Sept. 22, 2016) ("[W]hile an ALJ may not reject medical evidence for no reason or for the wrong reason, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the [relevant factors], if he sufficiently explains his rationale and if the record supports his findings." (quoting *Wireman v. Barnhart*, No. 2:05cv00046, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006))). Although the medical evidence of record reflects that Claimant complained of continued back pain, which Dr. Baisden described as "debilitati[ng]" (Tr. at 559), the ALJ explained that this representation was inconsistent with the other evidence that showed only "mild degenerative changes" and no surgery. (*Id.* at 22.) Similarly, despite Dr. Baisden's opinion that Claimant suffered from "chemo brain" (*id.* at 559) and the assertions by Ms. Lear, Claimant's sister, that Claimant had difficulty caring for herself after her surgeries (*id.* at 270), the ALJ found, based on Claimant's own statements about her abilities, that she had only "mild" limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. (*Id.* at 17–18.) The ALJ also used this information to conclude that Claimant's depression and anxiety were "nonsevere" impairments, in addition to observing that Claimant's mental status examinations with Dr. McFadden and Ms. Mann were largely normal aside from general depressed mood and self-reported symptoms. (*Id.* at 18, 21.) The ALJ further noted that Claimant "had irregular therapy sessions that appeared to be on an as needed basis, as opposed to consistent regular appointments" and "required no specified psychological or psychiatric care or hospitalization." (*Id.* at 22.)

Put simply, the ALJ's findings are supported by substantial evidence and adequately explained. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (explaining standard of review). By extension, his determinations that the opinions of Dr. Baisden and Ms. Lear were inconsistent with the record were not made in error, and he retained the discretion to discount

16

them.  *Mastro*, 270 F.3d at 178; *Jones*, 681 F. App'x at 255–56.  "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) (citing *Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993)).  Accordingly, the undersigned **FINDS** that the ALJ considered the available evidence and adequately explained his reasons for assigning "little weight" to Dr. Baisden's opinions about Claimant's limitations.

### IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 6), **GRANT** the Commissioner's request to affirm his decision (ECF No. 7), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties, Senior District Judge Faber, and the undersigned Magistrate Judge.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  August 2, 2019

Dwane L. Tinsley
United States Magistrate Judge